IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY STENSVAAG<br>5402 Moss Meadow Court<br>Sugar Land, TX 77479<br>Plaintiff,<br><br>v.<br><br>ENERGY TRANSFER PARTNERS LLC<br>1300 Main Street<br>Houston, TX 77002<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO.<br><br>JUDGE:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Kimberly Stensvaag, by and through undersigned counsel, as her Complaint against Defendant(S), states and avers the following:

**PARTIES, JURISDICTION & VENUE**

1. Stensvaag is a resident of the city of Sugar Land, county of Fort Bend, state of Texas.
2. Energy Transfer Partners LLC is a domestic limited liability company that operates a place of business located at 1300 Main Street, Houston, TX 77002.
3. Energy Transfer Partners LLC was at all times hereinafter mentioned an employer within the meaning of T.L.C. § 201.021 *et seq*; 42 U.S.C. 2000e-2 *et seq*.

4. Energy Transfer Partners LLC hires citizens of the state of Texas, contracts with companies in Texas, and owns or rents property in Texas. As such, the exercise of personal jurisdiction over Energy Transfer Partners LLC comports with due process.

5. This cause of action arose from or relates to the contracts of Energy Transfer Partners LLC with Texas residents, thereby conferring specific jurisdiction over Energy Transfer Partners LLC.

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

7. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Stensvaag's state law claims because those claims derive from a common nucleus of operative facts.

8. Venue is proper in this District because the wrongs herein alleged occurred in this District.

9. Within 300 days of the conduct alleged below, Stensvaag filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 460-2026-03826 against Energy Transfer Partners LLC operating at 1300 Main Street, Houston, TX 77002.

10. On or about 04/16/2026 the EEOC issued and mailed a Notice of Right to Sue letter to Stensvaag regarding the Charges of Discrimination brought by Stensvaag against Energy Transfer Partners LLC in EEOC Agency Charge No. 460-2026-03826.

11. Stensvaag received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Stensvaag has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Stensvaag has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Stensvaag is a former employee of Energy Transfer Partners LLC.

15. Stensvaag started her employment on or around May 4, 2009.

16. Stensvaag held the position of Lead Services Coordinator.

17. In early 2021, Stensvaag began experiencing gender-based harassment in the workplace.

18. The gender-based hostility Stensvaag experienced came particularly from John Hubbert.

19. Hubbert held the position of Senior Manager of Facilities at Energy Transfer Partners LLC.

20. Hubbert was not Stensvaag's direct supervisor.

21. The work environment became increasingly tense and unwelcoming for Stensvaag, marked by a pattern of ongoing gender-based harassment and excessive monitoring.

22. The excessive monitoring of Stensvaag included surveillance through workplace cameras that made it difficult for her to simply exist in the workplace.

23. Stensvaag became aware of Hubbert's constant monitoring because he would send Stensvaag images of herself from the monitoring camera.

24. Hubbert would restrict badge access to certain floors for Stensvaag, forcing her to contact him.

25. Hubbert would also comment on her bodily movements, where she was going, and who she was with.

26. Around early 2023, Stensvaag reported Hubbert's actions to her supervisor, Todd Stamm.

27. Todd Stamm took no action to address Stensvaag's complaint.

28. Around March or April 2023, Stensvaag reported Hubbert's actions to Security Manager, Rodney Winch.

29. Around late 2023, Winch told Stensvaag that senior leadership was aware of Hubbert's harassment, and that others made similar complaints.

30. Around February 2024, Hubbert sent a text to Stensvaag asking if she was comfy as he continued to monitor her.

31. Hubbert's text message made Stensvaag aware that Hubbert was still watching her.

32. Stensvaag told Winch that Hubbert was still harassing her.

33. Winch reached out to IT to shut down a camera server.

34. Hubbert reported to HR that he no longer had access to the cameras.

35. After having a meeting with HR, Hubbert was given livestream but was no longer allowed to pause the footage.

36. Once Hubbert's access was restored, he continued to send text messages to Stensvaag.

37. Stensvaag reported Hubbert's harassment again to Stamm, but Stamm did not want to get involved.

38. Stensvaag also reported Hubbert's harassment to Patrick Shiffer, Trucking Manager.

39. Shiffer did not want to get involved.

40. After Stensvaag came forward with her report of harassment and misconduct, Energy Transfer Partners LLC did not address the issues she reported.

41. In response to Stensvaag's report of harassment, Defendants did not interview Stensvaag.

42. In response to Stensvaag's report of harassment, Defendants did not interview Hubbert.

43. In response to Stensvaag's report of harassment, Defendant did not interview witnesses.

44. In response to Stensvaag's report of harassment, Defendant did not get a written statement from Stensvaag.

45. In response to Stensvaag's report of harassment, Defendant did not get a written statement from Hubbert.

46. In response to Stensvaag's report of harassment, Defendant did not get a written statement from witnesses.

47. Defendants did not investigate Stensvaag's report of harassment.

48. Per Energy Transfer Partners LLC's policies, a manger or supervisor that receives complaints of sexual harassment they are required to report that complaint to upper management and/or HR.

49. Energy Transfer Partners LLC did not report Stensvaag's complaint of sexual harassment to upper management or HR.

50. Per Energy Transfer Partners LLC's policies, a manger or supervisor that receives complaints of sexual harassment they are required to document said complaint in writing.

51. Energy Transfer Partners LLC did not document Stensvaag's complaint of sexual harassment.

52. An investigation should include interviewing the complainant.

53. An investigation should include interviewing the subject of the complaint.

54. An investigation should include interviewing the subject of the reported harassment.

55. An investigation should include interviewing witnesses to the reported harassment.

56. An investigation should include getting a written statement from the complainant.

57. An investigation should include getting a written statement from the subject of the complaint.

58. An investigation should include getting a written statement from the subject of the reported harassment.

59. Around the start of 2025, Stensvaag started to get harsher review of her time from Stamm.

60. Around May 2025, Stamm reviewed all pending company credit card expense reports line by line with all of his employees, which took place every month.

61. Stamm found no issues with Stensvaag expense reports.

62. On June 12, 2025, Stensvaag was suspended without pay pending an investigation.

63. On July 1, 2025, Energy Transfer Partners, LLC terminated Stensvaag's employment.

64. Energy Transfer Partners LLC's purported reason for Stensvaag's termination is pretext for her report of harassment.

65. Defendants' did not proffer a legitimate non-discriminatory reason for terminating Stensvaag.

66. As a result of Defendant's conduct, Stensvaag suffered, and will continue to suffer damages.

## COUNT I: SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C §2000e *ET SEQ.*

67. Stensvaag restates each and every paragraph of this Complaint as though it were fully restated herein.

68. Stensvaag was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

69. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

70. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Stensvaag repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

71. Energy Transfer Partners LLC's sexual harassment of Stensvaag occurred while she was acting in the course and scope of her employment as Lead Services Coordinator in Operations.

72. Stensvaag's supervisor had knowledge of Energy Transfer Partners LLC's sexual harassment and failed to take any corrective or remedial action.

73. As a direct and proximate result of Energy Transfer Partners LLC's conduct, Stensvaag has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: SEXUAL HARASMENT IN VIOLATION OF T.L.C. § 21.141 *ET SEQ.*

74. Stensvaag restates each and every paragraph of this Complaint as though it were fully restated herein.

75. Stensvaag was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

76. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

77. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Stensvaag repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

78. Energy Transfer Partners LLC's sexual harassment of Stensvaag occurred while she was acting in the course and scope of her employment as Lead Services Coordinator in Operations.

79. Stensvaag's supervisor had knowledge of Energy Transfer Partners LLC's sexual harassment and failed to take any corrective or remedial action.

80. Stensvaag suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to T.L.C. § 21.2585 *et seq*.

81. As a direct and proximate result of Energy Transfer Partners LLC's conduct, Stensvaag has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C § 2000e *ET SEQ.*

82. Stensvaag restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

83. During her employment with , Stensvaag was subjected to offensive and harassing conduct by Energy Transfer Partners LLC based on her sex.

84. Defendants knew or should have known of the harassing conduct against Stensvaag by Energy Transfer Partners LLC.

85. Defendants condoned, tolerated and ratified this harassing conduct.

86. This harassing conduct was severe and/or pervasive.

87. This harassing conduct was offensive to Stensvaag.

88. This harassing conduct interfered with Stensvaag's ability to perform her job duties.

89. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Stensvaag.

90. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Stensvaag.

91. As a direct and proximate result of Defendants' conduct, Stensvaag has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: <u>HOSTILE WORK ENVIORNMENT BASED ON SEX DISCRIMIANTION IN VIOLATION OF T.L.C. § 21.141 *ET SEQ.*</u>**

92. Stensvaag restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. During her employment with , Stensvaag was subjected to offensive and harassing conduct by Energy Transfer Partners LLC based on her sex.

94. Defendants knew or should have known of the harassing conduct against Stensvaag by Energy Transfer Partners LLC.

95. Defendants condoned, tolerated and ratified this harassing conduct.

96. This harassing conduct was severe and/or pervasive.

97. This harassing conduct was offensive to Stensvaag.

98. This harassing conduct interfered with Stensvaag's ability to perform her job duties.

99. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Stensvaag.

100. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Stensvaag.

101. Stensvaag suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to T.L.C. § 21.2585 *et seq*.

102. As a direct and proximate result of Defendants' conduct, Stensvaag has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C . § 2000e *ET SEQ.*

103. Stensvaag restates each and every prior paragraph of this complaint, as if it were fully restated herein.

104. As a result of the Defendant's discriminatory conduct described above, Stensvaag complained about the sexual harassment and hostile work environment she was experiencing.

105. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant failed to take prompt remedial action.

106. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant ratified the discrimination that Plaintiff suffered.

107. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant terminated Stensvaag's employment.

108. Defendant's actions were retaliatory in nature based on Stensvaag's opposition to the unlawful discriminatory conduct.

109. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Stensvaag, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VI: RETALIATION IN VIOLATION OF T.L.C. § 21.055

110. Stensvaag restates each and every prior paragraph of this complaint, as if it were fully restated herein.

111. As a result of the Defendant's discriminatory conduct described above, Stensvaag complained about the sexual harassment and hostile work environment she was experiencing.

112. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant failed to take prompt remedial action.

113. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant ratified the discrimination that Plaintiff suffered.

114. Subsequent to Stensvaag's reporting of sexual harassment and hostile work environment to Defendant, Defendant terminated Stensvaag's employment.

115. Defendant's actions were retaliatory in nature based on Stensvaag's opposition to the unlawful discriminatory conduct.

116. Stensvaag suffered emotional distress as a result of Defendant's conduct and is entitled emotional distress damages pursuant to T.L.C. § 21.2585 *et seq*.

117. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Stensvaag, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Kimberly Stensvaag request the Court to award from Defendants the following:

(a) Expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Stensvaag for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Stensvaag's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Austin Stelter, Esq.*

Austin Stelter (24136409)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive
Suite 200
Independence, OH 44131
Phone: (281) 397-3475
Fax: (216) 291-5744
Email: austin.stelter@spitzlawfirm.com

*Attorney For Plaintiff*
*Kimberly Stensvaag*

**JURY DEMAND**

Plaintiff Kimberly Stensvaag demands a trial by jury by the maximum number of jurors permitted.

/s/ *Austin Stelter* Austin Stelter, Esq. (24136409)