**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIMBERLY STENSVAAG,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 4:26-cv-05426** |
| **ENERGY TRANSFER PARTNERS,** | § | |
| **LLC,** | § | **Jury Demanded** |
| | § | |
| **Defendant/Counter-Plaintiff, and** | § | |
| | § | |
| **ENERGY TRANSFER LP,** | § | |
| | § | |
| **Counter-Plaintiff.** | | |

**DEFENDANT ENERGY TRANSFER PARTNERS, L.L.C.'S ORIGINAL ANSWER AND AFFIRMATIVE AND OTHER DEFENSES AND COUNTER-PLAINTIFFS' ENERGY TRANSFER PARTNERS, LLC'S AND ENERGY TRANSFER LP'S COUNTERCLAIMS TO PLAINTIFF'S ORIGINAL COMPLAINT**

Defendant/Counter-Plaintiff Energy Transfer Partners, L.L.C. ("Energy Transfer") submits this Original Answer and Affirmative and Other Defenses to Plaintiff Kimberly Stensvaag's ("Plaintiff" or "Stensvaag") Original Complaint ("Complaint"). Energy Transfer, together with Counter-Plaintiff Energy Transfer LP, also asserts the Counterclaims set forth below.

## AFFIRMATIVE AND OTHER DEFENSES

Energy Transfer pleads the following affirmative and other defenses, but does not assume the burden of proof except to the extent required on pure affirmative defenses:

1. Stensvaag's Complaint fails, in whole or in part, to state a cause of action upon which relief can be granted and should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. Subject to further discovery, Stensvaag's claims are barred, in whole or in part, because she has not fulfilled all conditions precedent to the institution of this lawsuit, all administrative prerequisites, and/or the applicable statutes of limitations.

3. To the extent Stensvaag claims discrimination, harassment, or retaliation against parties not specifically named and/or for matters outside of those specifically identified in her Equal Employment Opportunity Commission ("EEOC") and/or Texas Workforce Commission ("TWC") Charges of Discrimination, Stensvaag's claims are barred.

4. Stensvaag's claims are barred because any actions Energy Transfer took in regards to Stensvaag were based on reasonable factors other than her sex or alleged protected activity; were made in good faith and for good cause without malice; were essential and necessary to the operation of Energy Transfer's business; and were at all times motivated solely and required by legitimate, non-discriminatory, and non-retaliatory reasons.

5. Energy Transfer would have taken the same employment action against Stensvaag regardless of her sex or alleged protected activity.

6. All actions taken by Energy Transfer with respect to Stensvaag were justified, in good faith, and without malice.

7. Energy Transfer denies the allegations contained in Stensvaag's Complaint and denies that it engaged in any unlawful conduct. However, Energy Transfer affirmatively pleads that to the extent Stensvaag has alleged any unlawful conduct by it, Energy Transfer exercised reasonable care to prevent and correct promptly such behavior or conduct.

8. Subject to further discovery, Stensvaag's alleged losses and damage, if any, are the result of, and directly related to, Stensvaag's own or other parties' conduct, actions and/or failure to act, and not of Energy Transfer's conduct, actions, or failure to act.

9. Stensvaag's own acts or omissions were the sole and/or proximate cause of her alleged damages, if any.

10. Subject to further discovery, Energy Transfer asserts that Stensvaag failed to mitigate her damages, if any.

11. Stensvaag's claims for damages, if any, are capped or limited in accordance with applicable law.

12. Energy Transfer is not liable for punitive damages because any alleged actions are contrary to Energy Transfer's good-faith efforts to comply with anti-discrimination, anti-harassment, and anti-retaliation laws, including but not limited to Title VII of the Civil Right Act of 1964 ("Title VII") and Chapter 21 of the Texas Labor Code.

13. Stensvaag's claim for punitive damages violates the provisions of the Fourteenth Amendment of the United States Constitution and the Texas Constitution, Article I §§ 13 and 19.

14. Stensvaag's claim for punitive damages is barred because the alleged acts or omissions of Energy Transfer (assuming there are any) fail to rise to the level required to sustain an award of punitive damages, do not evidence malicious or reckless indifference to Stensvaag's protected rights, and are not so wanton or willful as to support an award of punitive damages.

15. Subject to further discovery, Energy Transfer asserts the defenses of ratification, repudiation, waiver, estoppel, statute of frauds, and/or laches.

16. Subject to further discovery, Energy Transfer asserts that Stensvaag's damages, if any, are limited by the doctrine of after-acquired evidence.

17. Energy Transfer reserves the right to assert other defenses reasonably in advance of trial.

## ORIGINAL ANSWER

Subject to the above and foregoing affirmative and other defenses, Energy Transfer pleads as follows to the specific allegations of Stensvaag's Complaint.

## PARTIES, JURISDICTION & VENUE

1. Energy Transfer lacks information to admit or deny whether Stensvaag is a resident of Sugar Land, Fort Bend County, Texas, and thus denies the same.

2. Energy Transfer admits that it is a Delaware limited liability company, but denies the remaining allegations contained in Paragraph 2 of Stensvaag's Complaint.

3. The allegations in Paragraph 3 of Stensvaag's Complaint are legal conclusions to which no response is required. To the extent that a response is required, Energy Transfer admits that it employed Stensvaag, but denies that it engaged in any unlawful conduct and that Stensvaag is entitled to any of the relief that she seeks.

4. Energy Transfer admits that it employs individuals who are citizens of Texas and that the Court has personal jurisdiction over it, but denies the remaining allegations contained in Paragraph 4 of Stensvaag's Complaint, that it engaged in any unlawful conduct, and that Stensvaag is entitled to any of the relief that she seeks.

5. Energy Transfer denies the allegations in Paragraph 5 of Stensvaag's Complaint.

6. Energy Transfer admits that this Court has jurisdiction under 28 U.S.C. § 1331 because Stensvaag alleges claims under Title VII, 42 U.S.C. 2000e-2, but denies the remaining allegations contained in Paragraph 6 of Stensvaag's Complaint, that it engaged in any unlawful conduct, and that Stensvaag is entitled to any of the relief that she seeks.

7. Energy Transfer admits that this Court has supplemental jurisdiction under 28 U.S.C. § 1367 of Stensvaag's state law claims, but denies the remaining allegations contained in

Paragraph 7 of Stensvaag's Complaint, that it engaged in any unlawful conduct, and that Stensvaag is entitled to any of the relief that she seeks.

8. Energy Transfer admits that venue is proper in this District, but denies the remaining allegations in Paragraph 8 of Stensvaag's Complaint, that it engaged in any unlawful conduct, and that Stensvaag is entitled to any of the relief that she seeks.

9. Energy Transfer admits that Plaintiff filed a Charge of Discrimination with the EEOC on February 16, 2026, but denies the remaining allegations in Paragraph 9 of Stensvaag's Complaint, that it engaged in any unlawful conduct, and that Stensvaag is entitled to any of the relief that she seeks.

10. Energy Transfer admits that the EEOC issued Stensvaag a Notice of Rights to Sue dated April 16, 2026, but denies that it engaged in any unlawful conduct and that Stensvaag is entitled to any of the relief that she seeks.

11. Energy Transfer admits that Stensvaag purports to attach her Right to Sue Letter as Exhibit A, but denies that it engaged in any unlawful conduct and that Stensvaag is entitled to any of the relief that she seeks.

12. Energy Transfer admits the allegations in Paragraph 12 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Stensvaag is entitled to any of the relief that she seeks.

13. The allegations in Paragraph 13 of Stensvaag's Complaint are legal conclusions to which no response is required.

## <u>FACTS</u>[1]

[1] Energy Transfer restates the headings used by Stensvaag in her Complaint solely for the convenience of the Court and not to indicate an admission of any allegation contained in those subheadings.

14. Energy Transfer admits the allegations in Paragraph 14 of Stensvaag's Complaint.

15. Energy Transfer admits that Stensvaag started her employment with Sunoco Logistics Partners L.P. on or around May 4, 2009.

16. Energy Transfer admits the allegations in Paragraph 16 of Stensvaag's Complaint.

17. Energy Transfer denies the allegations in Paragraph 17 of Stensvaag's Complaint.

18. Energy Transfer denies the allegations in Paragraph 18 of Stensvaag's Complaint.

19. Energy Transfer admits the allegations in Paragraph 19 of Stensvaag's Complaint.

20. Energy Transfer admits the allegations in Paragraph 20 of Stensvaag's Complaint.

21. Energy Transfer denies the allegations in Paragraph 21 of Stensvaag's Complaint.

22. Energy Transfer denies the allegations in Paragraph 22 of Stensvaag's Complaint.

23. Energy Transfer denies the allegations in Paragraph 23 of Stensvaag's Complaint.

24. Energy Transfer denies the allegations in Paragraph 24 of Stensvaag's Complaint.

25. Energy Transfer denies the allegations in Paragraph 25 of Stensvaag's Complaint.

26. Energy Transfer denies the allegations in Paragraph 26 of Stensvaag's Complaint.

27. Energy Transfer denies the allegations in Paragraph 27 of Stensvaag's Complaint.

28. Energy Transfer denies the allegations in Paragraph 28 of Stensvaag's Complaint.

29. Energy Transfer denies the allegations in Paragraph 29 of Stensvaag's Complaint.

30. Energy Transfer denies the allegations in Paragraph 30 of Stensvaag's Complaint.

31. Energy Transfer denies the allegations in Paragraph 31 of Stensvaag's Complaint.

32. Energy Transfer denies the allegations in Paragraph 32 of Stensvaag's Complaint.

33. Energy Transfer denies the allegations in Paragraph 33 of Stensvaag's Complaint.

34. Energy Transfer denies the allegations in Paragraph 34 of Stensvaag's Complaint.

35. Energy Transfer denies the allegations in Paragraph 35 of Stensvaag's Complaint.

36. Energy Transfer denies the allegations in Paragraph 36 of Stensvaag's Complaint.

37. Energy Transfer denies the allegations in Paragraph 37 of Stensvaag's Complaint.

38. Energy Transfer denies the allegations in Paragraph 38 of Stensvaag's Complaint.

39. Energy Transfer denies the allegations in Paragraph 39 of Stensvaag's Complaint.

40. Energy Transfer denies the allegations in Paragraph 40 of Stensvaag's Complaint.

41. Energy Transfer denies the allegations in Paragraph 41 of Stensvaag's Complaint.

42. Energy Transfer denies the allegations in Paragraph 42 of Stensvaag's Complaint.

43. Energy Transfer denies the allegations in Paragraph 43 of Stensvaag's Complaint.

44. Energy Transfer denies the allegations in Paragraph 44 of Stensvaag's Complaint.

45. Energy Transfer denies the allegations in Paragraph 45 of Stensvaag's Complaint.

46. Energy Transfer denies the allegations in Paragraph 46 of Stensvaag's Complaint.

47. Energy Transfer denies the allegations in Paragraph 47 of Stensvaag's Complaint.

48. Energy Transfer admits that it maintains employment policies prohibiting harassment, encourages employees to promptly report any concerns, and provides multiple avenues for employees to do so, including reporting concerns to management, Human Resources, or through designated reporting channels. To the extent Paragraph 48 purports to characterize the contents of any Energy Transfer policy, the applicable policy speaks for itself and is best evidence of its contents. Energy Transfer denies any remaining allegations or characterizations contained in Paragraph 48.

49. Energy Transfer denies the allegations in Paragraph 49 of Stensvaag's Complaint.

50. Energy Transfer admits that it maintains employment policies prohibiting harassment, encourages employees to promptly report any concerns, and provides multiple avenues for employees to do so, including reporting concerns to management, Human Resources,

or through designated reporting channels. To the extent Paragraph 50 purports to characterize the contents of any Energy Transfer policy, the applicable policy speaks for itself and is best evidence of its contents. Energy Transfer denies the remaining allegations in Paragraph 50 of Stensvaag's Complaint.

51. Energy Transfer denies the allegations in Paragraph 51 of Stensvaag's Complaint.

52. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include interviewing the complainant, but denies that Stensvaag made a complaint requiring such an investigation here.

53. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include interviewing the subject of the complaint, but denies that Stensvaag made a complaint requiring such an investigation here.

54. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include interviewing the subject of the reported alleged harassment, but denies that Stensvaag made a complaint requiring such an investigation here.

55. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include interviewing witnesses to the reported harassment, but denies that Stensvaag made a complaint requiring such an investigation here.

56. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include getting a

written statement from the complainant, but denies that Stensvaag made a complaint requiring such an investigation here.

57. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include getting a written statement from the subject of the complaint, but denies that Stensvaag made a complaint requiring such an investigation here.

58. Energy Transfer admits that the appropriate scope and manner of any investigation depends on the particular facts and circumstances and may, where appropriate, include getting a written statement from the subject of the reported harassment, but denies that Stensvaag made a complaint requiring such an investigation here.

59. Energy Transfer denies the allegations in Paragraph 59 of Stensvaag's Complaint.

60. Energy Transfer denies the allegations in Paragraph 60 of Stensvaag's Complaint.

61. Energy Transfer denies the allegations in Paragraph 61 of Stensvaag's Complaint.

62. Energy Transfer admits the allegations in Paragraph 62 of Stensvaag's Complaint.

63. Energy Transfer admits the allegations in Paragraph 63 of Stensvaag's Complaint.

64. Energy Transfer denies the allegations in Paragraph 64 of Stensvaag's Complaint.

65. Energy Transfer denies the allegations in Paragraph 65 of Stensvaag's Complaint.

66. Energy Transfer denies the allegations in Paragraph 66 of Stensvaag's Complaint.

**COUNT I: SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. §2000e *ET SEQ.***

67. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 67 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

68. Energy Transfer denies the allegations in Paragraph 68 of Stensvaag's Complaint.

69. Energy Transfer denies the allegations in Paragraph 69 of Stensvaag's Complaint.

70. Energy Transfer denies the allegations in Paragraph 70 of Stensvaag's Complaint.

71. Energy Transfer denies the allegations in Paragraph 71 of Stensvaag's Complaint.

72. Energy Transfer denies the allegations in Paragraph 72 of Stensvaag's Complaint.

73. Energy Transfer denies the allegations in Paragraph 73 of Stensvaag's Complaint.

## COUNT II: SEXUAL HARASSMENT IN VIOLATION OF T.L.C. § 21.141 *ET SEQ.*

74. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 74 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

75. Energy Transfer denies the allegations in Paragraph 75 of Stensvaag's Complaint.

76. Energy Transfer denies the allegations in Paragraph 76 of Stensvaag's Complaint.

77. Energy Transfer denies the allegations in Paragraph 77 of Stensvaag's Complaint.

78. Energy Transfer denies the allegations in Paragraph 78 of Stensvaag's Complaint.

79. Energy Transfer denies the allegations in Paragraph 79 of Stensvaag's Complaint.

80. Energy Transfer denies the allegations in Paragraph 80 of Stensvaag's Complaint.

81. Energy Transfer denies the allegations in Paragraph 81 of Stensvaag's Complaint.

## COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *ET SEQ.*

82. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 82 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

83. Energy Transfer denies the allegations in Paragraph 83 of Stensvaag's Complaint.

84. Energy Transfer denies the allegations in Paragraph 84 of Stensvaag's Complaint.

85. Energy Transfer denies the allegations in Paragraph 85 of Stensvaag's Complaint.

86. Energy Transfer denies the allegations in Paragraph 86 of Stensvaag's Complaint.

87. Energy Transfer denies the allegations in Paragraph 87 of Stensvaag's Complaint.

88. Energy Transfer denies the allegations in Paragraph 88 of Stensvaag's Complaint.

89. Energy Transfer denies the allegations in Paragraph 89 of Stensvaag's Complaint.

90. Energy Transfer denies the allegations in Paragraph 90 of Stensvaag's Complaint.

91. Energy Transfer denies the allegations in Paragraph 91 of Stensvaag's Complaint.

## COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX DISCRIMINATION IN VIOLATION OF T.L.C. § 21.141 *ET SEQ.*

92. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 92 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

93. Energy Transfer denies the allegations in Paragraph 93 of Stensvaag's Complaint.

94. Energy Transfer denies the allegations in Paragraph 94 of Stensvaag's Complaint.

95. Energy Transfer denies the allegations in Paragraph 95 of Stensvaag's Complaint.

96. Energy Transfer denies the allegations in Paragraph 96 of Stensvaag's Complaint.

97. Energy Transfer denies the allegations in Paragraph 97 of Stensvaag's Complaint.

98. Energy Transfer denies the allegations in Paragraph 98 of Stensvaag's Complaint.

99. Energy Transfer denies the allegations in Paragraph 99 of Stensvaag's Complaint.

100. Energy Transfer denies the allegations in Paragraph 100 of Stensvaag's Complaint.

101. Energy Transfer denies the allegations in Paragraph 101 of Stensvaag's Complaint.

102. Energy Transfer denies the allegations in Paragraph 102 of Stensvaag's Complaint.

**COUNT V: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e *ET SEQ.***

103. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 103 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

104. Energy Transfer denies the allegations in Paragraph 104 of Stensvaag's Complaint.

105. Energy Transfer denies the allegations in Paragraph 105 of Stensvaag's Complaint.

106. Energy Transfer denies the allegations in Paragraph 106 of Stensvaag's Complaint.

107. Energy Transfer denies the allegations in Paragraph 107 of Stensvaag's Complaint.

108. Energy Transfer denies the allegations in Paragraph 108 of Stensvaag's Complaint.

109. Energy Transfer denies the allegations in Paragraph 109 of Stensvaag's Complaint.

**COUNT VI: RETALIATION IN VIOLATION OF T.L.C. § 21.055**

110. Energy Transfer admits that Stensvaag incorporates the previous paragraphs by reference as stated in Paragraph 110 of Stensvaag's Complaint, but denies that it engaged in any unlawful conduct and that Plaintiff is entitled to any relief. Energy Transfer further incorporates its previous and subsequent responses to Stensvaag's allegations.

111. Energy Transfer denies the allegations in Paragraph 111 of Stensvaag's Complaint.

112. Energy Transfer denies the allegations in Paragraph 112 of Stensvaag's Complaint.

113. Energy Transfer denies the allegations in Paragraph 113 of Stensvaag's Complaint.

114. Energy Transfer denies the allegations in Paragraph 114 of Stensvaag's Complaint.

115. Energy Transfer denies the allegations in Paragraph 115 of Stensvaag's Complaint.

116. Energy Transfer denies the allegations in Paragraph 116 of Stensvaag's Complaint.

117. Energy Transfer denies the allegations in Paragraph 117 of Stensvaag's Complaint.

## DEMAND FOR RELIEF

Energy Transfer admits that Stensvaag seeks the relief outlined in the Demand for Relief, including subparts (a) through (f), but denies that such relief is appropriate, that Energy Transfer engaged in any unlawful conduct, and that Stensvaag is entitled to any of the recovery and/or relief sought.

## DEFENDANT/COUNTER-PLAINTIFF ENERGY TRANSFER PARTNERS, L.L.C.'S AND COUNTER-PLAINTIFF ENERGY TRANSFER LP'S ORIGINAL COUNTERCLAIMS AGAINST PLAINTIFF KIMBERLY STENSVAAG

1. Pursuant to Federal Rule of Civil Procedure 13, Defendant and Counter-Plaintiff Energy Transfer Partners, L.L.C. and Counter-Plaintiff Energy Transfer LP (collectively for purposes of the Counterclaims, "Energy Transfer," the "Company," or "Counter-Plaintiffs"), file these Original Counterclaims against Plaintiff Kimberly Stensvaag ("Stensvaag") and allege the following:

## I. NATURE OF THE ACTION

2. This action arises from a calculated, years-long scheme in which Stensvaag exploited her position of trust to steal more than $4.1 million from Energy Transfer. This figure is based on available records that only go back to 2017, and Energy Transfer believes the actual amount stolen by Stensvaag to be substantially greater.

3. Specifically, from approximately 2017 until her termination, Stensvaag used her company purchasing card to make millions of dollars in unauthorized personal purchases, falsified overtime records to obtain tens of thousands of dollars in compensation she had not earned, and took deliberate steps to conceal her misconduct. Among other things, Stensvaag used her supervisor's credentials to falsify expense approvals, fabricated emails purporting to authorize

increases to her own spending limits, and created inbox rules designed to divert oversight communications to her supervisor's trash folder.

4. After discovering and investigating Stensvaag's misconduct, Energy Transfer terminated her employment. Through these Counterclaims, Energy Transfer seeks to recover the losses caused by Stensvaag's misconduct and to hold her accountable for fraud, breach of fiduciary duty, conversion, and theft under Texas and federal law.

## II. PARTIES

5. Energy Transfer Partners, L.L.C. is a limited liability company that operates as a subsidiary of Energy Transfer LP, and at all relevant times was Stensvaag's employer.

6. Energy Transfer LP is a publicly traded master limited partnership and is the parent entity of Energy Transfer Partners, LLC.

7. As alleged in her Complaint, Stensvaag is a resident of Sugar Land, Texas. Stensvaag may be served through her attorney of record.

## III. JURISDICTION AND VENUE

8. The Court has jurisdiction based on 28 U.S.C. § 1367, because the underlying lawsuit is based on federal question jurisdiction, and these counterclaims are so related to the claims in the underlying lawsuit such that they form part of the same case or controversy under Article III of the U.S. Constitution.

9. Venue is proper because a substantial part of the events or omissions giving rise to the counterclaims occurred in this District and/or because, as alleged in her Complaint, Stensvaag resides in this District.

## IV. FACTS

### A. Energy Transfer's Business

10. Energy Transfer is a leading energy infrastructure company engaged in the transportation, storage, and distribution of natural gas, natural gas liquids, crude oil, and refined products across the United States, with operations spanning numerous states and a workforce comprised of employees in both field and corporate roles.

11. Energy Transfer is committed to conducting its business with integrity, professionalism, and in compliance with all applicable federal, state, and local laws.

12. Energy Transfer employees are trained on, and expected to understand and comply with, Energy Transfer's policies and procedures, including those set forth in its Employee Handbook.

13. The Employee Handbook expressly requires employees to act responsibly and with honesty, integrity, and due care at all times; to adhere to Energy Transfer's policies, procedures, and rules of conduct; and to comply with the Company's established standards of conduct.

14. The Employee Handbook further provides that employees who engage in unacceptable conduct may be subject to disciplinary action, up to and including termination. Specific examples of unacceptable conduct identified in the Handbook include theft of Company property, dishonesty, waste or misuse of Company materials, and performing personal work during working time.

15. Energy Transfer's Code of Business Conduct and Ethics likewise requires employees to act with absolute integrity at all times, to accept accountability for their actions, and to conduct Company business in a lawful and ethical manner.

## B. Stensvaag's Employment with Energy Transfer

16. In May 2009, Sunoco Logistics L.P. ("Sunoco Logistics") hired Stensvaag as a Lead Services—Coordinator, in which role she reported directly to Todd Stamm ("Stamm"), who currently serves as Group Senior Vice President of Operations.

17. In or around 2017, Sunoco Logistics merged with Energy Transfer, and the combined organization began operating under the Energy Transfer name.

18. As part of the merger, Sunoco Logistics employees like Stensvaag and Stamm were relocated to Energy Transfer office locations and integrated into Energy Transfer's systems and operations.

19. Stamm continued to serve as Stensvaag's supervisor following the merger.

20. As a Lead Services—Coordinator, Stensvaag's responsibilities were comparable to those of an executive assistant to Stamm. Her duties included providing administrative support to Stamm, coordinating travel and events, assisting with the scheduling of training and meetings, and performing other administrative functions.

21. While Stensvaag's role at Sunoco Logistics had included some broader responsibilities, following the merger, her duties were appropriately realigned to be consistent with other coordinator-level positions within Energy Transfer.

22. Importantly, Stensvaag did not have Delegation of Authority ("DOA") to approve expenses.

23. Stensvaag was issued a company purchasing card ("P-Card"), which Energy Transfer authorized for use solely for legitimate business expenses.

24. Energy Transfer's IT policies expressly prohibit employees from using another employee's credentials. Nevertheless, Stensvaag obtained Stamm's login and email credentials and exploited them over a period of years to carry out and conceal her fraudulent scheme.

**C. Energy Transfer's Expense Reimbursement Process**

25. Employees issued P-Cards are assigned an initial spending limit. An employee may request an increase to that limit, subject to approval by the employee's supervisor.

26. P-Card transactions are recorded in SAP Concur ("Concur"), a cloud-based expense-management platform utilized by Energy Transfer to centralize and administer employee spending and expense-reporting processes. At the end of each monthly reporting period, employees are responsible for assigning each P-Card transaction to an expense report and submitting the report for review and approval.

27. Energy Transfer's P-Card team conducts a high-level review of submitted expense reports. The employee's supervisor, however, is responsible for conducting a detailed review of the expense report before approving it, including reviewing the individual charges and supporting receipts and documentation.

28. Once an expense report receives supervisory approval, reports totaling less than $10,000 proceed for payment without additional approval. Expense reports exceeding $10,000 are elevated for further review and approval before payment is authorized.

29. As part of her role, Stensvaag printed expense reports from employees supervised by Stamm—including her own—and brought them to Stamm for his review each month. This routine task, seemingly administrative and unremarkable, became a cornerstone of her fraud.

30. Although Stensvaag submitted multiple expense reports each month, she did not present the entirety of those reports to Stamm for approval. Instead, as described below, she

systematically exploited her role—and the trust it required—to perpetrate a deliberate and sustained fraudulent scheme against the Company.

### D. Discovery of Stensvaag's Fraudulent Scheme

31. In early June 2025, Human Resources ("HR") began reviewing Stensvaag's overtime submissions after identifying an unusually high number of reported hours. As part of that review, HR determined that Stensvaag had claimed overtime on days when she was not present in the office. To further investigate, HR examined her broader timekeeping and expense records.

32. That review revealed far more than improper overtime reporting. Energy Transfer ultimately discovered that Stensvaag had engaged in a systematic and long-running pattern of financial misconduct.

33. On June 12, 2025, Energy Transfer suspended Stensvaag without pay pending the outcome of its investigation.

34. The investigation determined that Stensvaag had engaged in: (i) significant unauthorized personal use of her Company P-Card; (ii) fraudulent submission of expense and invoice reports; (iii) fraudulent submission of time records; and (iv) fraudulent use of Company IT systems to conceal her misconduct. The investigation further revealed that these were not isolated acts—they were components of a single, integrated scheme that Stensvaag was able to sustain for years, entirely undetected, precisely because she used Stamm's email account, credentials, and Concur password—the use of which was expressly prohibited by Energy Transfer's IT policies.

35. In practice, the scheme operated through a recurring six-step cycle: (i) Stensvaag made fraudulent personal charges using her P-Card; (ii) she coded them in Concur with codes such as professional training or other professional services under the guise that they were field training

or field meeting expenses; (iii) she submitted the expenses with attached receipts; (iv) she presented Stamm with limited information about only some of her expenses each month for his approval; (v) after meeting with Stamm, she logged into Concur using his credentials and approved her own charges; and (vi) any questions or follow-up communications from the P-Card review team were automatically diverted to Stamm's trash folder through inbox rules she had created in his email account. The components of this scheme are detailed in turn below.

**E. Stensvaag's Fraudulent and Unauthorized Personal Use of Her Company P-Card**

36. The scale of Stensvaag's P-Card fraud was staggering. From June 2017 through June 2025, Stensvaag submitted 634 expense reports totaling $4.6 million. Of that amount, at least $4.1 million consisted of personal charges that Stensvaag made to her P-Card. This figure is based on available records, which date back only to June 2017, and Energy Transfer believes the actual amount misappropriated by Stensvaag to be substantially greater. Over the course of nearly eight years, she looted the Company's accounts across virtually every category of consumer spending.

37. Specifically, the investigation concluded that Stensvaag misappropriated over $4.1 million in Company funds using her P-Card to make unauthorized personal purchases, including charges for apparel, electronics, streaming subscriptions, merchandise, automotive expenses, travel, food, storage and moving expenses, alcohol, events and entertainment, and office supplies.

38. In fact, Stensvaag made so many retail purchases that she used an Energy Transfer storage closet on Company premises to store merchandise purchased with the misappropriated funds. Among the items discovered in the storage closet were clothing, jewelry, and various electronic devices and merchandise.

39. The sheer volume, variety, and duration of these unauthorized purchases, spanning nearly eight years and exceeding millions of dollars, belie any suggestion that Stensvaag's conduct

amounted to isolated lapses in judgment. Instead, they reflect a deliberate and systematic scheme to exploit Company resources for her personal benefit.

## F. Stensvaag's Fraudulent Manipulation of Stamm's Computer Systems and Credentials

40. To obtain approval for these fraudulent purchases, Stensvaag would improperly code them in Concur as field expenses or training and carefully structure her expense reports to total less than $10,000—the threshold below which only Stamm's approval was required and no further review by upper management would be triggered.

41. Stensvaag controlled the information Stamm received about her expenses. After improperly coding these fraudulent purchases, Stensvaag printed select expense reports and brought them to Stamm for review. Notably, she only presented him with a subset of her expenses, omitting the reports containing her fraudulent personal charges.

42. After meeting with Stamm, Stensvaag then accessed his Concur account using his credentials and approved her own expense reports—including those containing her fraudulent personal charges—thereby creating the appearance that Stamm had personally reviewed and approved her expenses.

43. Stensvaag's misuse of Stamm's credentials was not limited to the Company's offices. For instance, in May 2025, Stensvaag used her P-Card to fund unauthorized personal travel to Miami, Florida. While in Miami, she accessed Stamm's Concur account using his credentials and approved expense reports associated with that very trip. Internet protocol ("IP") address data confirms that Stamm's Concur account was accessed from Miami during this period; Stamm was not in Miami in May 2025 and therefore could not have accessed Concur from that location.

44. To further facilitate and conceal her scheme, Stensvaag also used Stamm's email credentials to access Stamm's email account from her own computer.

45. Using Stamm's email account, Stensvaag sent emails to herself that falsely purported to reflect Stamm's approval of increases to her P-Card spending limit. She then forwarded these fabricated approvals to the P-Card team—without copying Stamm or otherwise notifying him—who, in reliance on what appeared to be legitimate supervisory authorizations, increased Stensvaag's spending limit accordingly.

46. Stensvaag's concealment efforts did not stop at forging approvals. She also took active measures to ensure that no warning signals would ever reach Stamm.

47. With access to Stamm's email account, Stensvaag set up inbox rules to automatically delete any emails Stamm received from HR employees; certain Accounting and Finance Department employees, including the P-Card team; automatic emails sent from various Concur domains; and any emails with the subject lines "eTime Report for Liquid Pipelines," "ADP," and "Open Text Items Need Action."

48. Stensvaag set up over 30 rules in Stamm's inbox to ensure he never saw emails from various senders referencing certain topics. As a direct result of these rules, emails from the P-Card team were never seen by Stamm because they were automatically diverted to his trash folder.

49. Through this combination of credential misuse, forged approvals, and systematic suppression of oversight communications, Stensvaag effectively ensured that the very channels through which her misconduct might have been discovered were silenced—leaving Stamm unable to detect what was happening under his own name.

## G. Stensvaag's Fraudulent Submission of Time Records

50. Stensvaag's misconduct was not limited to the P-Card scheme described above. Stensvaag simultaneously defrauded the Company through the systematic fabrication of overtime records.

51. From 2023 through 2025, Stensvaag reported 1,388 overtime hours, yielding overtime pay of approximately $77,000. These figures were excessive by any measure—particularly for an employee in a coordinator-level administrative role. Stamm had not approved this level of overtime, and the volume of hours Stensvaag claimed bore no reasonable relationship to the scope or demands of her actual job responsibilities.

52. HR's review of Stensvaag's timekeeping records confirmed that she had claimed overtime on days when she was not present in the office or otherwise performing work on behalf of the Company. Stensvaag did not work remotely, nor did her job responsibilities warrant weekend or after-hours work. Despite this, she routinely submitted time records reflecting hours purportedly worked on evenings and weekends when no evidence supported her presence or productivity.

53. Like her P-Card fraud, Stensvaag's fabrication of overtime records was not an isolated occurrence but rather a sustained pattern of dishonesty designed to extract additional unauthorized compensation from the Company over an extended period.

## H. Stensvaag's Termination

54. Following its investigation, Energy Transfer concluded that Stensvaag had engaged in a sustained, multi-faceted scheme to defraud the Company spanning nearly eight years. Stensvaag's conduct constituted financial misconduct, a fundamental breach of the trust the

Company had placed in her, and clear violations of the Company's Employee Handbook, Code of Business Conduct and Ethics, and established policies and procedures.

55. Accordingly, Energy Transfer terminated Stensvaag's employment effective July 1, 2025.

## V. CAUSES OF ACTION

### Count 1: Common Law Fraud

56. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

57. Stensvaag made numerous material misrepresentations of fact to Energy Transfer and its employees in furtherance of her fraudulent scheme. Among other things, Stensvaag fraudulently coded personal charges in the Concur system as legitimate business expenses, submitted expense reports she knew to contain unauthorized personal purchases, and presented Stamm with only a subset of her monthly expenses while concealing the reports containing her fraudulent charges—each of which constituted a false representation that the charges at issue were authorized, business-related expenditures.

58. Stensvaag further made material misrepresentations by accessing Stamm's email account and sending emails to herself that falsely purported to reflect Stamm's approval of increases to her P-Card spending limit, then forwarding those fabricated approvals to the P-Card team as though they were genuine supervisory authorizations. In addition, Stensvaag submitted falsified time records reflecting overtime hours she had not worked, each such submission constituting a material misrepresentation that she had performed work entitling her to overtime compensation.

59. Each of these misrepresentations was false, was known by Stensvaag to be false at the time it was made, and was made with the specific intent to induce Energy Transfer and its employees to act in reliance thereon—including by processing expense payments, increasing Stensvaag's P-Card spending limits, and paying overtime compensation to which she was not entitled. The deliberate and sustained nature of Stensvaag's conduct, including her systematic concealment efforts through forged approvals and the creation of inbox rules in Stamm's email account, further evidences her fraudulent intent.

60. Energy Transfer and its employees did in fact rely upon Stensvaag's misrepresentations. In reliance on what appeared to be properly coded and submitted expense reports bearing legitimate supervisory approval, Energy Transfer processed payments on Stensvaag's fraudulent P-Card charges. In reliance on what appeared to be genuine emails from Stamm authorizing spending limit increases, the P-Card team increased Stensvaag's spending limits on multiple occasions. And in reliance on Stensvaag's falsified time records, Energy Transfer paid Stensvaag overtime compensation she had not earned. Such reliance was justifiable, as Stensvaag took extensive measures to ensure that her misrepresentations would not be detected.

61. As a direct and proximate result of Stensvaag's fraudulent conduct, Energy Transfer has suffered actual damages in excess of $4.1 million in misappropriated P-Card funds (based on available records, although the amount is believed to be even greater), approximately $77,000 in fraudulently obtained overtime compensation, and additional consequential damages including investigation and remediation costs, in amounts to be proven at trial.

62. Given the deliberate, knowing, and egregious nature of Stensvaag's conduct—which spanned nearly eight years, involved the systematic fabrication of records and approvals,

and was designed at every stage to evade detection—Energy Transfer is entitled to an award of exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.003.

**Count 2: Breach of Fiduciary Duty**

63. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

64. As Stamm's direct report and the employee responsible for administering key aspects of his operations, Stensvaag occupied a position of trust and confidence within Energy Transfer. She owed fiduciary duties of undivided loyalty, good faith, and fidelity to Energy Transfer's interests.

65. Stensvaag breached those duties by, among other things: (i) using her P-Card to make unauthorized personal purchases while systematically subverting the supervisory controls she was entrusted to support; (ii) accessing Stamm's Concur account using his credentials to approve her own expense reports without his knowledge or authorization; (iii) using Stamm's email account to fabricate and forward emails purporting to reflect his approval of increases to her P-Card spending limit; and (iv) creating inbox rules in Stamm's email account to automatically delete communications from HR, the P-Card team, and other sources that would have exposed her scheme. These acts constitute a willful, sustained, and egregious breach of the fiduciary duties Stensvaag owed to Energy Transfer.

66. As a direct and proximate result of Stensvaag's breach of fiduciary duty, Energy Transfer has suffered actual damages and other consequential damages in amounts to be proven at trial. Energy Transfer is further entitled to disgorgement of all benefits wrongfully obtained by Stensvaag as a result of her breach.

## Count 3: Conversion

67. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Energy Transfer was the rightful owner of, and at all relevant times had the right to possess and control, the funds disbursed through its purchasing card program and the property maintained on its premises.

69. Stensvaag wrongfully exercised dominion and control over Energy Transfer's property by using her P-Card to make millions in unauthorized personal purchases and by retaining the resulting funds, goods, and merchandise. Stensvaag's acquisition and retention of this property was without Energy Transfer's knowledge or consent, was wholly inconsistent with Energy Transfer's rights as owner, and was to the exclusion of Energy Transfer's rightful possession.

70. As a direct and proximate result of Stensvaag's conversion, Energy Transfer has suffered actual damages in amounts to be proven at trial. Given the willful and malicious nature of Stensvaag's conduct, Energy Transfer further seeks exemplary damages.

## Count 4: Theft and Civil Liability Under the Texas Theft Liability Act (Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq*.)

71. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Stensvaag's P-Card was issued solely for authorized, legitimate business expenses. Stensvaag had no consent—actual or apparent—to use her P-Card for personal expenditures or to retain the proceeds thereof.

73. From June 2017 through June 2025, Stensvaag used her P-Card to make millions in unauthorized personal purchases, thereby unlawfully appropriating Energy Transfer's property with the intent to deprive Energy Transfer of its use and benefit. Stensvaag further obtained

approximately $77,000 in overtime compensation by submitting falsified time records reflecting hours she had not worked, constituting an additional unlawful appropriation of Company funds.

74. Stensvaag's conduct constitutes theft under Texas Penal Code § 31.03, giving rise to civil liability under the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001 et seq.

75. As a direct and proximate result of Stensvaag's theft, Energy Transfer has suffered actual damages in amounts to be proven at trial. Pursuant to the TTLA, Energy Transfer is entitled to recover its actual damages, an additional $1,000 in statutory damages, and its reasonable and necessary attorneys' fees and court costs.

**Count 5: Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

76. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

77. Energy Transfer's SAP Concur system, email servers, and related IT infrastructure constitute "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2), as they are used in or affecting interstate commerce.

78. Stensvaag intentionally accessed Energy Transfer's protected computers without authorization in furtherance of her fraudulent scheme. Energy Transfer's IT policies expressly prohibit employees from using another employee's credentials. Notwithstanding these prohibitions, Stensvaag used Stamm's Concur credentials to access his account and approve her own expense reports—including those containing fraudulent personal charges—without his knowledge or authorization. Stensvaag also used Stamm's email credentials to access his email account from her own computer, through which she fabricated supervisory approvals and manipulated his inbox to conceal her misconduct. This also happened interstate. For instance, IP

address data confirms that Stamm's Concur account was accessed from Miami, Florida in May 2025, at a time when Stamm was not in Miami and did not access his account from that location.

79. Using her unauthorized access to Stamm's email account, Stensvaag created inbox rules to automatically delete emails from HR, the P-Card team, the Accounting and Finance Department, and Concur domains—intentionally impairing the integrity and availability of Company communications and oversight mechanisms in violation of 18 U.S.C. § 1030(a)(5).

80. As a result of Stensvaag's violations, Energy Transfer has suffered "loss" within the meaning of 18 U.S.C. § 1030(e)(11) exceeding $5,000 during a one-year period, including the costs of its investigation, remediation of its IT systems, and other associated expenditures. Energy Transfer is entitled to compensatory damages and other equitable relief pursuant to 18 U.S.C. § 1030(g).

### Count 6: Unjust Enrichment/Money Had and Received

81. Energy Transfer incorporates by reference all preceding paragraphs as if fully set forth herein.

82. Stensvaag obtained and retained substantial benefits at Energy Transfer's expense through her fraudulent scheme. By making millions of dollars in unauthorized personal charges to her Company P-Card, Stensvaag acquired personal goods, services, and funds to which she had no entitlement. By submitting falsified time records and collecting overtime compensation she had not earned, Stensvaag was further unjustly enriched at Energy Transfer's expense.

83. Stensvaag's retention of these benefits is unconscionable and unjust. Energy Transfer is entitled to restitution of all amounts by which Stensvaag was unjustly enriched, in an amount to be proven at trial.

## VI. JURY DEMAND

84. Pursuant to Federal Rule of Civil Procedure 38, Energy Transfer respectfully demands a trial by jury on all claims, counterclaims, and issues so triable.

## VII. PRAYER

Wherefore, having fully answered and asserted its counterclaims, Defendant/Counter-Plaintiff Energy Transfer Partners, LLC and Counter-Plaintiff Energy Transfer LP pray that the Court:

a) dismiss Plaintiff's Original Complaint and that Plaintiff take nothing in her action;

b) grant judgment against Plaintiff in favor of Defendant/Counter-Plaintiffs on their claims for fraud, breach of fiduciary duty, conversion, theft and civil liability under the Texas Theft Liability Act, violation of the Computer Fraud and Abuse Act, and unjust enrichment/money had and received, including actual damages, exemplary damages, statutory damages, pre-judgment and post-judgment interest, and all other relief to which they are entitled;

c) award Defendant/Counter-Plaintiffs their costs of court and reasonable attorneys' fees; and

d) grant Defendant/Counter-Plaintiffs such other relief, general and specific, legal and equitable, to which they are justly entitled.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Kimberly F. Cheeseman*

Kimberly F. Cheeseman
State Bar No. 24082809
Federal I.D. No. 2254668
kimberly.cheeseman@nortonrosefulbright.com
1550 Lamar, Suite 2000
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

***ATTORNEY-IN-CHARGE FOR DEFENDANT/COUNTER-PLAINTIFFS***

OF COUNSEL
NORTON ROSE FULBRIGHT US LLP
Brooke Jones
State Bar No. 24107537
Federal I.D. No. 3342076
brooke.jones@nortonrosefulbright.com

1550 Lamar, Suite 2000
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

## CERTIFICATE OF SERVICE

This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on October 2, 2026.

Austin Stelter
**Spitz, The Employee's Law Firm**
3 Summit Park Drive, Suite 200
Independent, OH 44131
Phone: (281) 397-3475
Fax: (216) 291-5744
austin.stelter@spitzlawfirm.com

*Attorney for Plaintiff/Counter-Defendant*

*<u>/s/ Kimberly Cheeseman</u>*
Kimberly Cheeseman