**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIMBERLY STENSVAAG,** | § | **CASE NO: 4:26-CV-05426** |
| | § | |
| **Plaintiff/Counter-Defendant** | § | **JUDGE: HON. CHARLES ESKRIDGE** |
| | § | |
| **v.** | § | |
| | § | **Jury Demanded** |
| **ENERGY TRANSFER PARTNERS LLC,** | § | |
| | § | |
| **Defendant/Counter-Plaintiff, and** | § | |
| | § | |
| **ENERGY TRANSFER LP,** | § | |
| | § | |
| **Counter-Plaintiff** | § | |

**PLAINTIFF/COUNTER-DEFENDANT KIMBERLY STENSVAAG'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO DEFENDANTS' AND COUNTER-PLAINTIFF'S COUNTERCLAIMS**

Plaintiff/Counter-Defendant Kimberly Stensvaag ("Stensvaag" or "Counter-Defendant") files this Original Answer and Affirmative Defenses to Defendant/Counter-Plaintiff Energy Transfer Partners, LLC's and Counter-Plaintiff Energy Transfer LP's Original Counterclaims (collectively, "Counter-Plaintiffs"), and respectfully states as follows:

## ORIGINAL ANSWER

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, except as expressly admitted below, Stensvaag denies each allegation in the Counterclaims. To the extent any allegation contained in the Counterclaims has not been specifically admitted, denied, or otherwise addressed herein, such allegation is denied. Subject to the above and foregoing affirmative and other defenses, Stensvaag pleads as follows to the specific allegations of Energy Transfer's Counterclaims.

## I. NATURE OF THE ACTION

2. Stensvaag denies the allegation in Paragraph 2.

3. Stensvaag denies the allegations in Paragraph 3.

4. Stensvaag admits that Energy Transfer Partners, LLC terminated her employment. Stensvaag admits that Energy Transfer Partners, LLC stated that it allegedly conducted what it characterized as an investigation. Stensvaag denies that she engaged in fraud, breached any fiduciary duty, committed conversion or theft, violated federal law, or caused Counter-Plaintiffs recoverable losses. Stensvaag denies the remaining allegations in Paragraph 4.

## II. PARTIES

5. Stensvaag lacks knowledge or information sufficient to form a belief about the complete corporate organization, legal status, or relationship alleged in Paragraph 5 and therefore denies those allegations. Stensvaag admits that Energy Transfer Partners, LLC employed her during a portion of the relevant period.

6. Stensvaag lacks knowledge or information sufficient to form a belief about the allegations concerning Energy Transfer LP's legal status, ownership, or corporate relationship with Energy Transfer Partners, LLC and therefore denies those allegations in Paragraph 6.

7. Stensvaag admits that she resides in Sugar Land, Texas, and may be served through counsel of record. Stensvaag denies any remaining allegations in Paragraph 7.

## III. JURISDICTION AND VENUE

8. Paragraph 8 states legal conclusions to which no response is required. To the extent a response is required, Stensvaag admits that the Court has subject-matter jurisdiction over

properly pleaded claims falling within its original or supplemental jurisdiction but denies any remaining allegations.

9. Paragraph 9 states a legal conclusion to which no response is required. Stensvaag does not contest venue in this District for purposes of this action but denies any remaining allegations.

## IV. FACTS[1]

### A. Energy Transfer's Business

10. Stensvaag lacks knowledge or information sufficient to form a belief about the full scope of Counter-Plaintiffs' business operations, workforce, or activities and therefore denies the allegations in Paragraph 10.

11. Stensvaag lacks knowledge or information sufficient to form a belief about Counter-Plaintiffs' generalized characterization of their business practices and therefore denies the allegations in Paragraph 11.

12. Stensvaag admits that Energy Transfer maintained policies and procedures applicable to employees. The policies and procedures speak for themselves. Stensvaag denies any remaining allegations or characterizations in Paragraph 12.

13. Stensvaag admits that the Employee Handbook contained standards of employee conduct. The Employee Handbook speaks for itself, and Stensvaag denies any inaccurate or incomplete characterization of it in Paragraph 13.

14. Stensvaag admits that the Employee Handbook addressed disciplinary action and identified examples of conduct that could result in discipline. The Employee Handbook speaks for

[1] Stensvaag restates the headings used by Counter-Plaintiffs in their Counterclaim solely for the convenience of the Court and not to indicate an admission of any allegation contained in those subheadings.

itself. Stensvaag denies that she engaged in theft, dishonesty, waste, misuse of company materials, or other misconduct alleged in Paragraph 14.

15. In Paragraph 15, Stensvaag admits that Energy Transfer maintained a Code of Business Conduct and Ethics. That document speaks for itself. Stensvaag denies any inaccurate or incomplete characterization of it and denies that she violated it.

**B. Stensvaag's Employment with Energy Transfer**

16. Stensvaag admits that Sunoco Logistics L.P. hired her in approximately May 2009 as a Lead Services Coordinator and that she reported to Todd Stamm. Stensvaag denies any remaining allegations in Paragraph 16.

17. Stensvaag admits that Sunoco Logistics and Energy Transfer underwent a corporate transaction or integration in or around 2017 and that the combined organization operated under the Energy Transfer name. Stensvaag lacks knowledge sufficient to admit the precise legal characterization of the transaction and therefore denies that characterization.

18. Stensvaag admits that, following the transaction referenced in Paragraph 17, certain employees were integrated into Energy Transfer's locations, systems, and operations. Stensvaag denies any remaining allegations in Paragraph 18.

19. As referenced in Paragraph 19, Stensvaag admits that Stamm continued to serve as her supervisor following the corporate integration.

20. Stensvaag admits that her position included providing administrative support, coordinating travel and events, assisting with training and meetings, and performing other administrative functions. Stensvaag denies any incomplete characterization of her duties and responsibilities in Paragraph 20.

21. Stensvaag admits that her position included providing administrative support, coordinating travel and events, assisting with training and meetings, and performing certain administrative functions. Stensvaag denies any incomplete or inaccurate characterization of her duties and responsibilities in Paragraph 21.

22. Paragraph 22, Stensvaag admits that she did not have Delegation of Authority ("DOA") to approve expenses.

23. Stensvaag admits that she was issued a company purchasing card. Stensvaag further admits that company purchasing cards were intended for authorized expenses but denies that Counter-Plaintiffs have accurately or completely characterized the governing policies, practices, instructions, or authorizations in Paragraph 23. Stensvaag denies any remaining allegations in Paragraph 23.

24. Stensvaag admits that Energy Transfer maintained information-technology policies. Those policies speak for themselves. Stensvaag denies that she obtained or used Stamm's credentials to carry out or conceal any fraudulent scheme and denies the remaining allegations in Paragraph 24.

**C. Energy Transfer's Expense Reimbursement Process**

25. Stensvaag admits that purchasing cards were generally subject to spending limits and that requests could be made to adjust those limits. Stensvaag lacks knowledge sufficient to admit that Counter-Plaintiffs have completely described every applicable approval process and therefore denies the remaining allegations in Paragraph 25.

26. Stensvaag admits that purchasing-card transactions were recorded and administered through an expense-management system and that employees performed expense-reporting

functions within that system. Stensvaag denies any inaccurate or incomplete characterization of the process in Paragraph 26.

27. Stensvaag admits that expense reports were subject to review. Stensvaag lacks knowledge sufficient to admit Counter-Plaintiffs' characterization of the precise duties, practices, or level of review assigned to each person or department and therefore denies the remaining allegations in Paragraph 27.
28. Stensvaag lacks knowledge or information sufficient to form a belief about the complete approval process alleged in Paragraph 28 and therefore denies the allegations.
29. Stensvaag admits that her administrative duties included assisting with expense reports for personnel supervised by Stamm. Stensvaag denies that this work became a "cornerstone" of any fraud and denies the remaining allegations in Paragraph 29.
30. Stensvaag denies the allegations in Paragraph 30 and specifically denies engaging in any fraudulent scheme, misuse of company funds, unauthorized purchases, or any other wrongful conduct alleged therein.

**D. Alleged Discovery of Fraudulent Scheme**

31. Stensvaag admits that Human Resources reviewed her overtime submissions in or around June 2025. Stensvaag denies that she submitted overtime for hours she did not work and denies the remaining allegations in Paragraph 31.
32. In response to Paragraph 32 of the Counterclaims, Stensvaag lacks knowledge or information sufficient to form a belief regarding the details of Counter-plaintiffs' internal review and investigation process and therefore denies the same pursuant to Rule 8(b)(5). Stensvaag specifically denies engaging in improper overtime reporting and denies any remaining allegations in Paragraph 32.

33. Stensvaag admits that Energy Transfer suspended her without pay on or about June 12, 2025, pending an alleged investigation. Stensvaag denies any implication that the suspension was justified or established misconduct in Paragraph 33. Stensvaag denies any remaining allegations in Paragraph 33.

34. Stensvaag admits that Counter-Plaintiffs' investigation purported to reach the alleged conclusions described in Paragraph 34. Stensvaag denies those conclusions, denies that she engaged in financial misconduct or fraud, and denies the remaining allegations in Paragraph 34.

35. Stensvaag denies each allegation and characterization in Paragraph 35, including each component of the alleged "six-step cycle."

**E. Alleged Personal Use of the Company Purchasing Card**

36. Stensvaag denies the allegations in Paragraph 36, including Counter-Plaintiffs' characterization of the transactions, their calculations, and their allegation that she misappropriated any company funds.

37. Stensvaag denies the allegations in Paragraph 37.

38. Stensvaag denies that she used company premises to store merchandise obtained through misappropriated funds. Stensvaag denies the remaining allegations and characterizations in Paragraph 38.

39. Stensvaag denies the allegations in Paragraph 39, including any characterization of her alleged conduct as deliberate, fraudulent, deceptive, unauthorized, or improper.

**F. Alleged Manipulation of Computer Systems and Credentials**

40. Stensvaag denies that she improperly coded, manipulated, disguised, or concealed expenses and otherwise denies the allegations in Paragraph 40.

41. Stensvaag denies the allegations in Paragraph 41, including any allegation that she intentionally withheld information from supervisors, approvers, auditors, or Company personnel.
42. Stensvaag denies the allegations and specifically denies accessing another employee's account without authorization in Paragraph 42.
43. In response to Paragraph 43 of the Counterclaims, Stensvaag denies the allegations and specifically denies improperly utilizing another employee's credentials or approving transactions through unauthorized means.
44. In response to Paragraph 44 of the Counterclaims, Stensvaag denies the allegations and specifically denies unauthorized access to another person's email account.
45. In response to Paragraph 45 of the Counterclaims, Stensvaag denies the allegations and specifically denies creating, generating, transmitting, or utilizing fabricated approvals.
46. In response to Paragraph 46 of the Counterclaims, Stensvaag denies the allegations.
47. In response to Paragraph 47 of the Counterclaims, Stensvaag admits that automated email rules and inbox-management tools may have existed within Company email systems but denies creating or utilizing any such rule for an improper purpose and otherwise denies the allegations.
48. In response to Paragraph 48 of the Counterclaims, Stensvaag denies the allegations and specifically denies establishing any inbox rule or similar mechanism to conceal information, evade review, or facilitate wrongdoing.
49. In response to Paragraph 49 of the Counterclaims, Stensvaag denies the allegations and specifically denies intentionally suppressing communications or concealing information from Counter-plaintiffs.

### G. Alleged Submission of Time Records

50. In response to Paragraph 50 of the Counterclaims, Stensvaag denies the allegations and specifically denies falsifying, inflating, or fabricating overtime records.
51. Stensvaag lacks knowledge sufficient to admit Counter-Plaintiffs' calculations concerning the total overtime hours and compensation described in Paragraph 51 and therefore denies those calculations. Stensvaag denies that she fabricated time records, claimed compensation for time she did not work, or submitted unauthorized overtime, fraudulent, excessive, or otherwise unauthorized.
52. In response to Paragraph 52 of the Counterclaims, Stensvaag denies the allegations and specifically denies claiming compensation for time not worked.
53. In response to Paragraph 53 of the Counterclaims, Stensvaag denies the allegations, including any characterization of her conduct as dishonest, fraudulent, intentional, deceptive, or otherwise improper.

### H. Stensvaag's Termination

54. Stensvaag admits that Energy Transfer conducted an investigation and purported to reach the conclusions described in Paragraph 54. Stensvaag denies those conclusions and denies that she engaged in financial misconduct, breached Counter-Plaintiffs' trust, or violated applicable policies. Stensvaag denies any remaining allegations in Paragraph 54.
55. Stensvaag admits that Energy Transfer terminated her employment effective on or about July 1, 2025. Stensvaag denies that the termination was lawful, justified, or based on an accurate investigation, and denies any remaining allegations.

## V. Causes of Action

### Count 1: Common Law Fraud

56. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here, and to the extent any allegation in the Counterclaims purports to characterize a document, email, policy, handbook, accounting record, electronic record, investigative report, or other writing, such document speaks for itself and Stensvaag denies any characterization inconsistent with the document's contents.
57. Stensvaag denies the allegations in Paragraph 57.
58. Stensvaag denies the allegations in Paragraph 58.
59. Stensvaag denies the allegations in Paragraph 59, including that she knowingly made any false representation or acted with fraudulent intent.
60. Stensvaag denies the allegations in Paragraph 60, including that Counter-Plaintiffs justifiably relied on any actionable misrepresentation by her.
61. Stensvaag denies the allegations in Paragraph 61, including Counter-Plaintiffs' calculations, causation allegations, and claim to damages.
62. Paragraph 62 states legal conclusions to which no response is required. To the extent a response is required, Stensvaag denies that Counter-Plaintiffs are entitled to exemplary damages or any other relief.

### Count 2: Breach of Fiduciary Duty

63. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here.

64. Stensvaag denies that her employment or administrative responsibilities created the fiduciary relationship or fiduciary duties alleged in Paragraph 64. Stensvaag denies the remaining allegations.
65. Stensvaag denies the allegations in Paragraph 65.
66. Stensvaag denies the allegations in Paragraph 66, including causation, damages, and any entitlement to disgorgement or other relief.

**Count 3: Conversion**

67. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here.
68. Stensvaag lacks knowledge sufficient to admit the ownership and possessory allegations as to every category of funds or property referenced in Paragraph 68 and therefore denies those allegations.
69. Stensvaag denies the allegations in Paragraph 69, including that she wrongfully exercised dominion or control over Counter-Plaintiffs' property.
70. Stensvaag denies the allegations in Paragraph 70, including causation, damages, malice, and any entitlement to exemplary damages.

**Count 4: Theft and Civil Liability Under the Texas Theft Liability Act (Tex. Civ. Prac, & Rem. Code §§ 134.001 *et seq*.)**

71. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here.
72. Stensvaag admits that she was issued a company purchasing card subject to applicable policies, practices, instructions, and authorizations. Stensvaag denies that Counter-

Plaintiffs have completely characterized the scope of those policies, practices, instructions, or authorizations and denies the remaining allegations.

73. Stensvaag denies the allegations in Paragraph 73, including that she unlawfully appropriated company property, intended to deprive Counter-Plaintiffs of property, or obtained compensation through false time records.
74. Paragraph 74 states legal conclusions to which no response is required. To the extent a response is required, Stensvaag denies that she committed theft and denies that she is subject to civil liability under the Texas Theft Liability Act.
75. Stensvaag denies the allegations in Paragraph 75, including Counter-Plaintiffs' claim to actual damages, statutory damages, attorneys' fees, costs, or other relief.

**Count 5: Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

76. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here.
77. Paragraph 77 states legal conclusions concerning the statutory term "protected computers" to which no response is required. Stensvaag lacks knowledge sufficient to admit the technical allegations concerning Counter-Plaintiffs' information-technology infrastructure and therefore denies the remaining allegations.
78. Stensvaag denies the allegations in Paragraph 78, including that she intentionally accessed a protected computer without authorization, exceeded authorized access, committed fraud, fabricated approvals, manipulated an inbox, or used another person's credentials unlawfully.

79. Stensvaag denies the allegations in Paragraph 79, including that she intentionally impaired the integrity or availability of data, systems, communications, or oversight mechanisms.

80. Stensvaag denies the allegations in Paragraph 80, including that Counter-Plaintiffs suffered a qualifying statutory loss caused by her conduct or are entitled to compensatory damages or equitable relief.

**Count 6: Unjust Enrichment/Money Had and Received**

81. Stensvaag incorporates her responses to the preceding paragraphs as though fully set forth here.

82. Stensvaag denies the allegations in Paragraph 82, including that she received or retained any benefit to which she was not entitled.

83. Stensvaag denies the allegations in Paragraph 83, including that her retention of any payment or benefit was unconscionable or unjust or that Counter-Plaintiffs are entitled to restitution.

## VI. Jury Demand

84. Stensvaag admits that Counter-Plaintiffs have demanded a jury trial. No further response is required for Paragraph 84.

## VII. AFFIRMATIVE DEFENSES

Without assuming any burden not otherwise imposed by law and reserving the right to amend these defenses as discovery proceeds, Stensvaag asserts the following affirmative defenses:

**Count 1: Common Law Fraud**

1. Failure to state a claim. Counter-plaintiffs has not alleged and cannot prove facts establishing every required element of common-law fraud.

2. No actionable misrepresentation. Plaintiff did not make any material false representation of an existing fact to Counter-plaintiffs.
3. No fraudulent omission. Plaintiff did not conceal or fail to disclose any material fact that Plaintiff had a legal duty to disclose.
4. Truth or substantial truth. Any statement Plaintiff made concerning purchasing requests was true or substantially true when made.
5. Opinion, prediction, or future conduct. Any challenged statement was a nonactionable opinion, prediction, estimate, or statement concerning future conduct. Plaintiff did not make a promise while harboring a present intent not to perform it.
6. Lack of knowledge or recklessness. Plaintiff did not know that any challenged statement was false and did not make any statement recklessly or without knowledge of its truth.
7. No intent to induce reliance. Plaintiff did not make any statement or omission with the intent that Counter-plaintiffs act or refrain from acting in reliance on it.
8. No actual or justifiable reliance. Counter-plaintiffs did not actually or justifiably rely on any alleged representation or omission. Counter-plaintiffs had access to its purchasing records, financial records, computer systems, approval procedures, supervisory personnel, and information concerning any purchasing orders.
9. Authorization and approval. The purchasing requests, transactions, communications, and other conduct challenged by Counter-plaintiffs were authorized, directed, reviewed, approved, or knowingly permitted by Stamm.
10. No causation or damages. No representation or omission by Plaintiff caused Counter-plaintiffs' alleged injury, and Counter-plaintiffs sustained no recoverable fraud damages.

11. Statute of limitations. Count 1 is barred, in whole or in part, to the extent it accrued outside the applicable limitations period before October 2, 2026.
12. Counter-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. The allegations underlying the Counterclaims were known or, through the exercise of reasonable diligence, reasonably should have been known to Counter-Plaintiffs through their books and records, expense-reporting systems, approval processes, audits, supervisory oversight, and other information within their possession or control. Accordingly, the discovery rule, fraudulent-concealment doctrine, and any other tolling doctrine do not apply and do not delay accrual of Counter-Plaintiffs' claims.No fraudulent concealment. Plaintiff did not use deception to conceal a wrongful act or induce Counter-plaintiffs to delay filing their claim.
13. Waiver, estoppel, consent, and ratification. Counter-plaintiffs authorized, approved, accepted the benefits of, or otherwise ratified the conduct at issue. Counter-plaintiffs’ acts and omissions also preclude them from asserting a position inconsistent with their prior conduct.
14. Counter-Plaintiffs' claims are barred, in whole or in part, by the economic-loss rule to the extent they seek tort recovery for losses arising from duties governed by contract or the employment relationship.
15. Failure to mitigate. Counter-plaintiffs failed to take reasonable steps to avoid or reduce their alleged losses after learning, or after they reasonably should have learned, of the relevant facts.

**Count 2: Breach of Fiduciary Duty**

1. Failure to state a claim. Counter-plaintiffs have not alleged and cannot prove facts establishing the existence and scope of a fiduciary duty, breach, causation, an improper benefit, or recoverable damages.
2. No fiduciary relationship. Plaintiff did not occupy a formal or informal fiduciary position concerning the alleged conduct. The ordinary employment relationship did not create the broad fiduciary obligations alleged by Counter-plaintiffs.
3. Ministerial role. Plaintiff served as Lead Services Coordinator and performed administrative or ministerial duties, including preparing or submitting purchasing requests to Stamm for review and approval.
4. No independent authority or discretion. Plaintiff lacked independent authority to approve purchases, commit Counter-plaintiffs' funds, select or bind vendors, negotiate material terms, control Counter-plaintiffs' accounts, direct material business operations, or make final purchasing decisions.
5. Limited scope of any duty. Alternatively, any duty arising from Plaintiff's employment or agency relationship was limited to the responsibilities actually entrusted to Plaintiff and did not extend to control of Counter-plaintiffs' funds.
6. No breach. Plaintiff acted within the scope of Plaintiff's assigned responsibilities and did not act adversely to Counter-plaintiffs concerning any matter entrusted to Plaintiff.
7. No self-dealing or improper benefit. Plaintiff did not divert a business opportunity, misuse Counter-plaintiffs' property, engage in undisclosed self-dealing, or obtain an improper personal benefit.
8. Authorization, consent, and approval. Counter-plaintiffs, through Stamm, authorized, directed, supervised, approved, or knowingly permitted the challenged conduct.

9. No causation or damages. No act or omission by Plaintiff caused Counter-plaintiffs' alleged injury, and Counter-plaintiffs sustained no recoverable damages resulting from a breach of fiduciary duty.
10. Statute of limitations. Count 2 is barred, in whole or in part, to the extent it accrued outside the applicable limitations period before October 2, 2026.
11. Counter-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. The allegations underlying the Counterclaims were known or, through the exercise of reasonable diligence, reasonably should have been known to Counter-Plaintiffs through their books and records, expense-reporting systems, approval processes, audits, supervisory oversight, and other information within their possession or control. Accordingly, the discovery rule, fraudulent-concealment doctrine, and any other tolling doctrine do not apply and do not delay accrual of Counter-Plaintiffs' claims.
12. Waiver, estoppel, consent, and ratification. Counter-plaintiffs' knowledge, approval, acceptance of benefits, or failure to object after receiving material information bars or limits this claim.
13. Unclean hands. Counter-plaintiffs' inequitable conduct concerning purchasing requests bars or limits any equitable relief.
14. Counter-Plaintiffs' claims are barred, in whole or in part, by the economic-loss rule to the extent they seek tort recovery for losses arising from duties governed by contract or the employment relationship.
15. Failure to mitigate. Counter-plaintiffs failed to take reasonable steps to avoid or reduce their alleged losses.

## Count 3: Conversion

1. Failure to state a claim. Counter-plaintiffs have not alleged and cannot prove every required element of conversion.
2. No ownership or immediate right to possession. Counter-plaintiffs did not own or have an immediate superior right to possess the property allegedly converted at the relevant time.
3. No specifically identifiable property. The property or interest identified by Counter-plaintiffs is not sufficiently specific, segregated, or identifiable to support a conversion claim.
4. Property not subject to conversion. The alleged property or interest is not property capable of supporting the conversion theory asserted by Counter-plaintiffs.
5. No wrongful dominion or control. Plaintiff did not wrongfully exercise dominion or control over Counter-plaintiffs' property in a manner inconsistent with Counter-plaintiffs' rights.
6. Authorization and consent. Any possession, use, transfer, submission, or retention of property was authorized, directed, approved, or knowingly permitted by Counter-plaintiffs or Stamm.
7. Lawful possession. To the extent Plaintiff possessed any property belonging to Counter-plaintiffs, Plaintiff obtained and held it lawfully within the scope of Plaintiff's employment duties.
8. No demand and refusal. To the extent a demand was required, Counter-plaintiffs did not make a legally sufficient demand for return of the property that Plaintiff wrongfully refused.
9. Return or no deprivation. Plaintiff returned the property, made it available to Counter-plaintiffs, or did not deprive Counter-plaintiffs of its possession or use.

10. No causation or damages. Plaintiff's conduct did not cause Counter-plaintiffs' alleged loss, and Counter-plaintiffs sustained no recoverable conversion damages.
11. Statute of limitations. Count 3 is barred, in whole or in part, as to each alleged taking, transfer, or exercise of control occurring outside the applicable limitations period before October 2, 2026.
12. No continuing wrong. Counter-plaintiffs may not combine separate, completed transactions beginning on 2017 into a single continuing wrong to revive claims that accrued outside the applicable limitations period.
13. Counter-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. The allegations underlying the Counterclaims were known or, through the exercise of reasonable diligence, reasonably should have been known to Counter-Plaintiffs through their books and records, expense-reporting systems, approval processes, audits, supervisory oversight, and other information within their possession or control. Accordingly, the discovery rule, fraudulent-concealment doctrine, and any other tolling doctrine do not apply and do not delay accrual of Counter-Plaintiffs' claims.
14. Waiver, estoppel, consent, and ratification. Counter-plaintiffs' authorization, approval, acceptance of benefits, or subsequent ratification bars or limits the conversion claim.

**Count 4: Theft and Civil Liability Under the Texas Theft Liability Act**

1. Failure to state a claim. Counter-plaintiffs have not alleged and cannot prove facts establishing an actionable predicate theft offense or civil liability.
2. No unlawful appropriation. Plaintiff did not unlawfully acquire or otherwise exercise control over property belonging to Counter-plaintiffs.

3. Effective consent. Any acquisition, possession, use, transfer, or control of property occurred with Counter-plaintiffs' effective consent or under authority granted by Counter-plaintiffs or Stamm.
4. No intent to deprive. Plaintiff did not act with the intent to deprive Counter-plaintiffs of property.
5. No deception or other culpable conduct. Plaintiff did not obtain property or services through deception, coercion, a false pretext, or any other conduct satisfying the alleged predicate theft offense.
6. No theft of services. Plaintiff did not intentionally or knowingly secure services without consent or avoid payment for services Plaintiff knew were provided only for compensation.
7. No qualifying property or services. Counter-plaintiffs cannot identify property or services within the scope of the predicate offense alleged in the counterclaim.
8. Ownership and possession disputed. Counter-plaintiffs did not own or have a superior possessory interest in the property allegedly taken.
9. Good-faith claim of right. Plaintiff acted, if at all, under a good-faith belief that the property, funds, access, compensation, or benefit was authorized or lawfully available to Plaintiff.
10. No causation or compensable injury. Counter-plaintiffs sustained no qualifying injury or recoverable damages caused by an alleged theft.
11. Statute of limitations. Count 4 is barred, in whole or in part, as to each alleged act occurring outside the applicable limitations period before October 2, 2026.

12. Separate accrual of discrete acts. Each alleged purchase, payment, transfer, appropriation, or receipt of services constituted a discrete act, if it occurred at all, and cannot be combined into a continuing wrong to revive an otherwise untimely claim.
13. Counter-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. The allegations underlying the Counterclaims were known or, through the exercise of reasonable diligence, reasonably should have been known to Counter-Plaintiffs through their books and records, expense-reporting systems, approval processes, audits, supervisory oversight, and other information within their possession or control. Accordingly, the discovery rule, fraudulent-concealment doctrine, and any other tolling doctrine do not apply and do not delay accrual of Counter-Plaintiffs' claims.
14. Waiver, estoppel, consent, and ratification. Counter-plaintiffs authorized, approved, accepted the benefits of, or ratified the challenged transactions or conduct.
15. Failure to mitigate. Counter-plaintiffs failed to take reasonable steps to prevent or reduce their alleged losses.

**Count 5: Violation of Computer Fraud and Abuse Act**

1. Failure to state a claim. Counter-plaintiffs have not alleged and cannot prove every requirement for a civil claim under the Computer Fraud and Abuse Act.
2. Authorized access. Plaintiff accessed Counter-plaintiffs' computers, systems, accounts, files, or information, if at all, through credentials and permissions provided or knowingly permitted by Counter-plaintiffs for Plaintiff's employment duties.
3. No access without authorization. Plaintiff did not intentionally access a protected computer without authorization.

4. No exceeding authorized access. Plaintiff did not access prohibited areas of Counter-plaintiffs' computer systems or obtain information Plaintiff was not entitled to obtain through authorized access.
5. Use of information not unauthorized access. Any dispute concerning how information was allegedly used after authorized access does not establish that Plaintiff accessed a computer without authorization or exceeded authorized access.
6. No prohibited intent. Plaintiff did not access any computer with intent to defraud, further an unlawful scheme, obtain value unlawfully, cause damage, or commit any other prohibited act.
7. No statutory damage. Plaintiff did not impair the integrity or availability of Counter-plaintiffs' data, programs, systems, or information.
8. No qualifying loss. Counter-plaintiffs did not incur a qualifying loss caused by investigating or responding to a technological impairment resulting from Plaintiff's conduct.
9. No applicable statutory threshold. Counter-plaintiffs cannot establish the required statutory loss, damage, or other circumstance necessary to maintain the civil claim alleged.
10. No causation. Plaintiff's conduct did not cause the alleged computer impairment, response costs, interruption, or other claimed injury.
11. Statute of limitations. Count 5 is barred, in whole or in part, because it was not asserted within the applicable period after the alleged act or discovery of the alleged damage.
12. Counter-Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. The allegations underlying the Counterclaims were known or, through the exercise of reasonable diligence, reasonably should have been known to Counter-Plaintiffs

through their books and records, expense-reporting systems, approval processes, audits, supervisory oversight, and other information within their possession or control. Accordingly, the discovery rule, fraudulent-concealment doctrine, and any other tolling doctrine do not apply and do not delay accrual of Counter-Plaintiffs' claims.

13. Separate accrual of discrete access events. Each alleged access event accrued separately and cannot be treated as part of a continuing violation to revive untimely conduct beginning in 2017.
14. Authorization, consent, waiver, and estoppel. Counter-plaintiffs provided Plaintiff's credentials and permissions, knew of or permitted the relevant access, and are barred from characterizing authorized conduct as unauthorized.
15. Failure to mitigate. Counter-plaintiffs failed to use reasonable access controls, revoke credentials, preserve systems, investigate alerts, or otherwise avoid or reduce the alleged loss after learning of the relevant facts.

**Count 6: Unjust Enrichment and Money Had and Received**

1. Failure to state a claim. Counter-plaintiffs have not alleged and cannot prove facts establishing a right to recover under unjust enrichment or money had and received.
2. No unjust benefit. Plaintiff did not obtain or retain money, property, services, or any other benefit that belongs in equity and good conscience to Counter-plaintiffs.
3. No money belonging to Counter-plaintiffs. Plaintiff does not possess or control funds that equitably belong to Counter-plaintiffs.
4. Earned or authorized compensation. Any compensation, reimbursement, payment, property, or benefit Plaintiff received was earned, authorized, approved, supported by consideration, or otherwise lawfully retained.

5. Contract governs the subject matter. Counter-plaintiffs' equitable claims are barred or limited to the extent Employment Agreement governs the same subject matter.

6. No fraud, duress, or undue advantage. Plaintiff did not obtain any benefit through fraud, duress, coercion, mistake, or the taking of undue advantage.

7. Voluntary payment. Any payment or benefit was knowingly and voluntarily conferred by Counter-plaintiffs with actual or constructive knowledge of the material facts and without fraud, duress, or compulsion.

8. Authorization, consent, and ratification. Counter-plaintiffs authorized, approved, knowingly permitted, or ratified the payments, transfers, compensation, or other benefits challenged in this count.

9. Adequate consideration. Counter-plaintiffs received the work, services, performance, or other consideration associated with any payment or benefit at issue.

10. No inequitable retention. The circumstances do not make Plaintiff's retention of any payment or benefit unjust or inequitable.

11. Statute of limitations. Count 6 is barred, in whole or in part, as to each alleged payment, transfer, or benefit received outside the applicable limitations period before October 2, 2026.

12. Separate accrual of discrete transactions. Each alleged payment, transfer, or receipt of a benefit accrued separately and cannot be combined into a continuing wrong to revive otherwise untimely claims.

13. Waiver and estoppel. Counter-plaintiffs knowingly relinquished the asserted right or acted in a manner inconsistent with it, and Plaintiff reasonably relied on Counter-plaintiffs' conduct.

14. Laches. Counter-plaintiffs unreasonably delayed asserting their equitable claims after knowing or having reason to know the relevant facts, and the delay materially prejudiced Plaintiff.
15. Unclean hands. Counter-plaintiffs' inequitable conduct concerning purchasing orders bars or limits equitable recovery.
16. Failure to mitigate. Counter-plaintiffs failed to take reasonable steps to avoid or reduce their alleged losses.

**General Defenses:**

1. Plaintiff incorporates the preceding paragraphs as though fully stated in this section.
2. Lack of causation. No act or omission by Plaintiff was the actual or proximate cause of Counter-plaintiffs' alleged injuries. Any alleged loss resulted from Counter-plaintiffs' own conduct, inadequate controls or supervision, acts of third parties, preexisting circumstances, or intervening or superseding causes.
3. No recoverable damages. Counter-plaintiffs sustained no recoverable damages caused by Plaintiff. The damages claimed are speculative, uncertain, unsupported, duplicative, avoidable, or otherwise unavailable.
4. Failure to mitigate. Counter-plaintiffs failed to take reasonable steps to avoid or reduce their alleged losses after learning, or after they reasonably should have learned, of the relevant facts.
5. Waiver. Counter-plaintiffs knowingly relinquished, or acted inconsistently with, the rights asserted in its Counterclaims.

6. Estoppel. Counter-plaintiffs' representations, approvals, silence, conduct, or omissions induced Plaintiff reasonably to act or refrain from acting, and Counter-plaintiffs are estopped from taking an inconsistent position to Plaintiff's detriment.
7. Consent and authorization. Counter-plaintiffs authorized, directed, approved, or knowingly permitted the conduct challenged in the Counterclaims.
8. Ratification. Counter-plaintiffs knew of, approved, accepted the benefits of, or otherwise ratified the challenged conduct or transactions.
9. Payment, release, and accord and satisfaction. Counter-plaintiffs' claims are barred or reduced to the extent the alleged obligations were paid, released, resolved, discharged, or satisfied under Counter-plaintiffs' alleged investigation that resulted in no criminal charge.
10. Offset and recoupment. Any recovery by Counter-plaintiffs must be reduced by amounts Counter-plaintiffs owe Plaintiff, payments or benefits Counter-plaintiffs received, amounts previously recovered, and any other applicable offset or recoupment.
11. Election of remedies and no double recovery. Counter-plaintiffs may not obtain inconsistent remedies or recover more than once for the same alleged injury by recasting the same conduct under overlapping legal and equitable theories.
12. Plaintiff asserts each defense in the alternative. No defense constitutes an admission of any allegation, and Plaintiff does not assume any burden that otherwise belongs to Counter-plaintiffs.
13. Stensvaag reserves the right to amend these affirmative defenses and assert additional defenses reasonably in advance of trial.

## PRAYER

Stensvaag admits that the Counter-Plaintiffs seek the relief outlined in the Prayer, including parts (a) through (d), but denies that such relief is appropriate. Kimberly Stensvaag respectfully requests that Defendant/Counter-Plaintiffs take nothing by their Counterclaims, that all relief requested therein be denied, that costs be taxed against Defendant/Counter-Plaintiffs, and that Stensvaag be awarded all further relief, at law or in equity, to which she may be justly entitled.

Respectfully submitted,

*/s/ Austin Stelter*___________________

Austin Stelter (24136409)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Drive, Suite 200
Independence, OH 44131
Phone: (216) 291-4744
Fax: (216) 291-5744
austin.stelter@spitzlawfirm.com

*Attorney for Plaintiff*
*Kimberly Stensvaag*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 23, 2026, a copy of the foregoing was served via the Court's Online Filing System to all parties.

*/s/ Austin Stelter, Esq.*
Austin Stelter, Esq. (24136409)
**SPITZ, THE EMPLOYEE'S LAW FIRM**